UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTOPHER JONES,

                Plaintiff,                                 Hon. Ellen S.  Carmody

v.

                                            Case No. 1:10-cv-1262

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/


**OPINION**

      This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act.  On April 12, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (Dkt. #10).

      Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

1

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

2

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 38 years old at the time of the ALJ's decision.  (Tr. 29, 91).  He successfully completed high school, as well as three years of college, and worked previously as an assembler, customer service representative, and a general officer clerk.  (Tr. 25, 117-34, 156-57, 161).

Plaintiff applied for benefits on December 19, 2005, alleging that he had been disabled since June 25, 2000, due to right foot problems.  (Tr. 91-95, 155).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 30-90).  On September 11, 2008, Plaintiff appeared before ALJ James Prothro II, with testimony being offered by Plaintiff and vocational expert, David Holwerda.  (Tr. 496-544).  In a written decision dated November 19, 2008, the ALJ determined that Plaintiff was disabled between the dates of December 23, 2001, and July 1, 2007, but not thereafter.  (Tr. 19-29).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 11-13).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On November 7, 2003, Plaintiff was examined by Dr. Christi Cavaliere.  (Tr. 456).

An examination of Plaintiff's right foot revealed a "large keloid[1] on [the] right plantar surface,[2] 1-2

cm thick, surface made up of multiple thick nodules very close together with deep grooves between

adjacent nodules."  (Tr. 456).  The doctor observed that Plaintiff "underwent excision and grafting

of this area in September of 2001," but that "since then, the skin graft has become a large confluent

area of keloid along the plantar surface with additional tissue growing up the lateral and medial

aspect of the scar."  (Tr. 456).  Plaintiff was treated with a steroid injection.  (Tr. 456).

Treatment notes dated January 14, 2004, indicate that steroidal treatment had not

benefitted Plaintiff and previous radiation treatment "did not prevent recurrence."  (Tr. 455).  It was

observed that Plaintiff "may benefit from re-irradiation, but keloid is in an area with much tension,

which encourages re-formation."  (Tr. 455).

On July 8, 2004, Plaintiff underwent a procedure to excise the keloid on his right foot

after which Plaintiff received further radiation treatment.  (Tr. 448-50).  Treatment notes dated July

21, 2004, indicate that Plaintiff subsequently experienced an infection of his right foot.  (Tr. 443).

As a result of this infection, "part" of the skin graft on Plaintiff's right foot was "lost."  (Tr. 434).

Treatment notes dated August 10, 2004, indicate that Plaintiff "is not healing well at all" and "now

has wound covering entire plantar mid-foot and up lateral walls of foot."  (Tr. 430).

---

[1] Keloids have been referred to as "scars that don't know when to stop."  *See* Keloid, available at
http://www.medicinenet.com/keloid/article.htm (last visited on February 27, 2012).  A keloid is a "tough heaped-up scar
that rises quite abruptly above the rest of the skin."  Keloids are "irregularly shaped and tend to enlarge progressively."
Keloids "do not subside over time" and some "become quite large" and "itchy, tender, or even painful to the touch."  *Id.*

[2] The plantar surface refers to the bottom (or sole) of the foot.  *See* Plantar Surface of Foot, available at
http://www.drugs.com/dict/plantar-surface-of-foot.html (last visited on February 27, 2012).

On July 8, 2004, Plaintiff underwent a procedure to excise "a large keloid on the plantar aspect of his right foot followed by a split-thickness skin graft from his right medial thigh to his right plantar foot." (Tr. 254-55). Plaintiff was discharged from the hospital five days later with instructions to "be non-weight-bearing on his right lower extremity at all times." (Tr. 255). Plaintiff was also instructed that "while non-ambulating, he should keep his right foot elevated." (Tr. 255). Plaintiff subsequently experienced an infection and "underwent debridement of [his] right plantar foot wound with placement of a wound vacuum-assisted closure device" on August 6, 2004. (Tr. 252-53).

Treatment notes dated January 28, 2005, reveal that Plaintiff's right foot was "well healed" with "no return of keloid at this time." (Tr. 345).

Treatment notes dated April 19, 2006, indicate that Plaintiff was experiencing "large fungating keloids over entire [right] mid foot plantar surface." (Tr. 336). Plaintiff's treaters determined that he was "likely to benefit from progressive compression hose application to control edema and related pain." (Tr. 336). Accordingly, Plaintiff was instructed to begin wearing compression hose on his right lower extremities. (Tr. 336). Treatment notes dated July 26, 2006, indicate that Plaintiff's right foot "is still painful, swollen and draining clear fluid." (Tr. 334).

On June 16, 2006, Plaintiff participated in a consultive examination conducted by Paul Kitchen, Ph.D. (Tr. 266-70). When asked why he was applying for disability benefits, Plaintiff responded "because of an ongoing condition with my right foot which prevents me from being active or being gainfully employed." (Tr. 266). Specifically, Plaintiff reported that his ability to stand on his right foot is severely limited. (Tr. 266). The results of a mental status examination were unremarkable. (Tr. 268-69). Plaintiff was diagnosed with depressive disorder and his GAF score

was rated at 56.[3]   (Tr. 270).

On June 29, 2006, Plaintiff participated in a consultive examination conducted by Dr. Paul Ratcliff.  (Tr. 271-75).  Plaintiff reported that because of the keloid on his right foot he experiences "severe difficulty with walking" and is "unable to stand or walk for more than three minutes without having pain."  (Tr. 271).  The doctor observed that Plaintiff walked with "a mild right limp and toe walking gait, although does not use an assistive device for ambulation."  (Tr. 275).  An examination of Plaintiff's right foot revealed a "large hypertrophic scar measuring approximately 12 by 20 by 5 centimeters."  (Tr. 275).  Otherwise, the results of a physical examination were unremarkable.  (Tr. 272-75).

On September 26, 2006, Plaintiff was examined by Dr. William Fox.  (Tr. 315).  An examination of Plaintiff's right foot revealed "a mushroom type lesion on the entire plantar aspect of his foot" which "also goes up into the medial aspect of the arch and into the lateral aspect of the fifth metatarsal base and around the heel."  (Tr. 315).  The doctor observed that "it does appear that this is an extremely large keloid on the bottom of the foot."  (Tr. 315).  Noting that x-rays of Plaintiff's foot had never been taken, Dr. Fox recommended that an x-ray of Plaintiff's foot be accomplished "as soon as possible."  (Tr. 315).  The doctor further observed that Plaintiff "may need a CT scan or MRI to actually trace into the soft tissue to see if there is any other sort of cancer or tumor formation."  (Tr. 315).  X-rays of Plaintiff's right foot, taken on October 4, 2006, revealed no significant bony abnormality but a "large lobulated soft tissue mass covering most of the plantar

---

[3]   The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV).  A GAF score of 56 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning."  DSM-IV at 34.

surface of the foot."  (Tr. 316).

On September 30, 2006, Dr. William Kuzon completed a report regarding Plaintiff's physical ability to perform work-related activities. (Tr. 256-59).  The doctor reported that during an eight-hour work day, Plaintiff can sit for six hours, stand for 30 minutes, walk for 30 minutes, and sit/stand for 30 minutes. (Tr. 256).  The doctor reported that Plaintiff can occasionally lift/carry up to 25 pounds. (Tr. 256).  Dr. Kuzon reported that Plaintiff is "unable to bear weight on right foot for prolonged periods" and that Plaintiff "has chronic pain and scarring in right foot that limits walking or use of this leg." (Tr. 258-59).  Dr. Kuzon concluded that Plaintiff "has an un-treatable scar condition of his right foot that has resulted in a permanent pain syndrome [and] a permanent disability." (Tr. 259).

Treatment notes dated November 29, 2006, reveal that Plaintiff was experiencing "daily pain" that ranged from 6/10 to 10/10. (Tr. 329).  Treatment notes dated February 8, 2007, reveal that the "plantar surface of scar appears flatter," but Plaintiff "reports no change in pain level." (Tr. 322).

On March 21, 2007, Plaintiff was examined by Dr. Steven Challah.  (Tr. 239). Plaintiff reported that the keloid on this right foot "is painful and uncomfortable all of the time" and that "the pain increases with ambulation." (Tr. 239).  Plaintiff reported that he "has a difficult time finding shoes that fit" and that "insoles...have not worked." (Tr. 239).  An examination of Plaintiff's right lower extremity revealed that muscle function and strength were within normal limits, but that the keloid was "hypersensitive to touch." (Tr. 239).  The doctor observed that the keloid on Plaintiff's right foot "encompasses the entire plantar arch." (Tr. 239).  Dr. Challah observed that "it does not appear that an insole or orthotic will work for the patient due to the size of the keloid." (Tr.

7

239).  The doctor, therefore, referred Plaintiff "to prosthetics for custom shoe consult."  (Tr. 239).

Treatment notes dated May 10, 2007, indicate that Plaintiff was fitted for custom shoes with "pressure relief inserts."  (Tr. 246).  Treatment notes dated May 18, 2007, indicate that the scar on Plaintiff's right foot was "less thick" and that the "invaginations at arch of foot are looser."  (Tr. 230).  Plaintiff reported that he was wearing his "custom...compression garment" on his right lower extremity.  (Tr. 230).  Treatment notes dated June 22, 2007, indicate that Plaintiff's keloid had slightly decreased in size, but that Plaintiff "reports no change in pain level."  (Tr. 229).

Treatment notes dated August 1, 2007, indicate that Plaintiff was "able to ambulate comfortably."  (Tr. 246).  Treatment notes dated August 24, 2007, indicate that Plaintiff's right foot "is a bit better" and that physical therapy was "really helping."  (Tr. 226).  Treatment notes dated February 8, 2008, indicate that the keloid on Plaintiff's right foot was "healing well" and "not as large as before."  (Tr. 221).  Plaintiff reported that the pain in his foot was "manageable" with medication.  (Tr. 221).

On July 10, 2008, Dr. Kuzon authored a letter regarding Plaintiff's condition.  (Tr. 490).  In relevant part, Dr. Kuzon stated the following:

> The patient was treated for plantar keloid.  Our management was not effective in resolving his problem and resulted in recurrent keloid, fasciitis, chronic pain, painful scarring and associated psychological issues.
>
> The patient has an untreatable scarring condition that has resulted in permanent chronic pain syndrome and a permanent disability, which makes it impossible for the patient to stand, walk and sit for more than 15 minutes at a time.  It also prevents him from driving.  He is unable to do any labor that requires him to stand.  He is also unable to work a job that requires he sit for long periods of time because of the need to elevate the foot at hip-level.  The pain and associated psychological state interferes with his ability to maintain attention and

8

concentration.

Other factors that would interfere with work on a sustained basis are the need to take unexpected and/or more frequent than normal breaks from work in order to change bandages and dressing.  There is also the likelihood of more-than-normal absences from work to go to doctor appointments and to deal with flare-ups.

It is my opinion that he is unable to sustain employment.

(Tr. 490).

On July 21, 2008, Dr. Monica Lypson completed a report regarding Plaintiff's physical ability to perform work-related activities.  (Tr. 198-201).  The doctor reported that during an eight-hour work day, Plaintiff was able to sit for five hours, stand for one hour, and walk for one hour.  (Tr. 198).  The doctor also reported that Plaintiff required a sit-stand option.  (Tr. 198).  Dr. Lypson reported that Plaintiff can occasionally lift/carry 20 pounds and can frequently lift/carry 10 pounds.  (Tr. 198).  The doctor reported that Plaintiff was unable to use his right lower extremity for repetitive moments such as the operation of pedals and foot controls.  (Tr. 200).

At the Administrative Hearing, Plaintiff testified that he last worked in May 2005 performing clerical work for a mortgage company.  (Tr. 503-04).  Plaintiff testified that he held this position for three months but was forced to quit because the work "was aggravating [his] foot."  (Tr. 504, 520-21).  Plaintiff also testified that his custom made shoes did not provide him with much relief.  (Tr. 522-23).  Plaintiff reported that because he has had to adjust the way he walks he also experiences back pain.  (Tr. 528).  Plaintiff testified that the pain in his right foot ranged from 7/10 to 10/10 and that medication provided him "very little" help.  (Tr. 528-29).  Plaintiff testified that he was unable to stand for more than five or 10 minutes.  (Tr. 529).

## ANALYSIS OF THE ALJ'S DECISION

The Social Security Act provides that disability benefits may be terminated if "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling." 42 U.S.C. § 423(f). Termination of benefits must be supported, however, by substantial evidence that (1) there has been medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f)(1)(A)-(B); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994); *Niemasz v. Barnhart*, 155 Fed. Appx. 836, 840 (6th Cir., Nov. 18, 2005) ("[o]nce an ALJ finds a claimant disabled, he must find a medical improvement in the claimant's condition to end his benefits, a finding that requires 'substantial evidence' of a 'medical improvement' and proof that he is 'now able to engage in substantial gainful activity'") (quoting 42 U.S.C. § 423(f)(1)).

The social security regulations articulate an eight-step sequential process by which determinations of continuing disability are made.[4] *See* 20 C.F.R. §§ 404.1594, 416.994. If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. The steps of this sequential process are as follows:

(1)     Is the individual engaging in substantial gainful activity;

(2)     Does the individual have an impairment or combination of impairments which meets or equals in severity an impairment identified in the Listing of Impairments;

---

[4]   This eight-step sequential process clearly applies in cases where a claimant, previously found to be disabled, is later found to be no longer be disabled. This sequential process also applies in closed benefits cases such as this, where the finding of disability and termination of disability are rendered in the same decision. *See Niemasz*, 155 Fed. Appx. at 836-40.

(3)     Has the individual experienced a medical improvement;

(4)     Is the improvement related to the individual's ability to perform work (i.e., has there been an increase in the individual's residual functional capacity based on the impairment(s) present at the time of the most recent favorable medical determination);

(5)     If the individual has either not experienced a medical improvement or any such improvement is unrelated to his ability to perform work, do any of the exceptions to the medical improvement standard apply;

(6)     Does the individual suffer from a severe impairment or combination of impairments;

(7)     Can the individual perform his past relevant work;

(8)     Can the individual perform other work;[5]

*Id.*

Furthermore, when the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability. *See Cutlip*, 25 F.3d at 286.  Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition."  *Id.* Nevertheless, the burden of proof to establish that a claimant has experienced a medical improvement which renders him capable of performing substantial gainful activity lies with the Commissioner.  *See, e.g., Kennedy v. Astrue*, 247 Fed. Appx. 761, 764-65 (6th Cir., Sept. 7, 2007); *Couch v. Commissioner of Social Security*, 2012 WL 394878 at *10 (S.D. Ohio, Feb. 7, 2012).

The ALJ determined that Plaintiff suffers from an injury to the right foot with recurrent keloid formation, a severe impairment that whether considered alone or in combination

---

[5]  While not expressly stated in the regulations, it is clear that "other" work refers to work which exists in significant numbers.  *See, e.g., Mote v. Shalala*, 1995 WL 358636 at *12 (N.D.Ind., May 12, 1995).

11

with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 23). The ALJ found that from December 23, 2001, through June 30, 2007, Plaintiff was unable to perform his past relevant work or any work which existed in significant numbers due to the keloid-related pain he was experiencing. (Tr. 23-28). Thus, the ALJ found Plaintiff to be disabled during this period of time. The ALJ further concluded, however, that as July 1, 2007, Plaintiff experienced a medical improvement in his condition. (Tr. 26).

The ALJ found that Plaintiff's improvement was related to his ability to work and resulted in an increase in his residual functional capacity. (Tr. 26-28). Specifically, the ALJ determined that as of July 1, 2007, Plaintiff retained the ability to perform light work[6] subject to the following limitations: (1) he can stand/walk for two hours during an 8-hour workday; (2) he can sit for six hours during an 8-hour workday; (3) he cannot climb ladders, ropes, or scaffolds; (4) he is able to perform postural movements occasionally; and (5) he cannot operate pedals with his right foot. (Tr. 26). Relying on the testimony of a vocational expert, the ALJ found that while Plaintiff was unable to perform his past relevant work there existed a significant number of jobs he could perform despite his limitations. Accordingly, the ALJ concluded that as of July 1, 2007, Plaintiff was no longer disabled as defined by the Social Security Act.

---

[6] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

a.      The ALJ's Assessment of the Medical Evidence is Not Supported by Substantial Evidence

Plaintiff asserts that the ALJ failed to accord controlling weight to certain opinions expressed by Dr. Kuzon and Dr. Lypson, two of his treating physicians.  The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Wilson*, 378 F.3d at 544.  In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of

13

the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

In July 2008, Dr. Kuzon reported that Plaintiff's impairment prevented him from standing, walking, or sitting for longer than 15 minutes at one time. In other words, Dr. Kuzon expressed the opinion that Plaintiff required a sit-stand option. That same month, Dr. Lypson likewise expressed the opinion that Plaintiff required a sit/stand option.

The ALJ discounted these opinions on the ground that evidence subsequent to July 1, 2007, indicates that Plaintiff was impaired to a much lesser degree. While Plaintiff appeared to experience an improvement in his symptoms during the spring and summer of 2007, the record does not support the conclusion that Plaintiff's symptoms improved to an extent that would permit him to work 8-hours daily without benefit of a sit-stand option. To the contrary, the overwhelming evidence of record reveals that it is utterly unreasonable to conclude that Plaintiff is capable of working without benefit of a sit-stand option. The Court concludes, therefore, that the ALJ's decision to accord less than controlling weight to the opinions expressed by Dr. Kuzon and Dr. Lypson is not supported by substantial evidence.

14

> b.     The ALJ's Decision to Discount Plaintiff's Subjective Allegations is Not
>         Supported by Substantial Evidence

As described above, Plaintiff testified at the administrative hearing that he was

impaired to an extent beyond that recognized by the ALJ.  Plaintiff asserts that the ALJ improperly

discounted his subjective allegations.  With respect to Plaintiff's credibility, the ALJ concluded:

> After considering the evidence of record, the undersigned finds that
> the claimant's medically determinable impairments could reasonably
> be expected to produce the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible beginning on July
> 1, 2007, to the extent they are inconsistent with the residual
> functional capacity assessment for the reasons explained below.

(Tr. 27).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical

impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th

Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29,

2002) (same).   As the relevant Social Security regulations make clear, however, a claimant's

"statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20

C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th

Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed.

Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's

assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the
> alleged pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

15

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

      Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

      In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

      The rationale cited by the ALJ in support of his decision to discount Plaintiff's credibility is (in its entirety) as follows:

      Certainly, the claimant has had a serious injury to his right foot that

16

> continues to present significant functional limitations for him.
> However, the treatment notes from May 2007 through September
> 2007 clearly demonstrate a stabilization of the keloid lesion and its
> effective treatment.  Claimant's functioning (walking, standing) is
> medically improved with the use of Jobst and other compression
> stockings as well as customized orthotic devices.

(Tr. 27).

The observation by the ALJ that Plaintiff's symptoms improved between May 2007 and September 2007 is not necessarily inaccurate.  Nevertheless, while Plaintiff's symptoms may have improved for a brief period of time, such does not necessarily call into question the credibility of Plaintiff's later testimony.  As Dr. Kuzon observed in 2008, the treatment Plaintiff received for his impairment was ultimately "not effective" and, as a result, Plaintiff was suffering from an "untreatable" impairment causing "permanent chronic pain."  (Tr. 490).  This conclusion is overwhelmingly supported by the evidence of record and is consistent with Plaintiff's testimony. The ALJ's rationale that a brief period of medical improvement is a sufficient basis for discounting a claimant's testimony that is consistent with the medical record as a whole is unpersuasive. Accordingly, the Court finds that there does not exist substantial evidence to support the ALJ's decision to discredit Plaintiff's subjective allegations of pain and limitation.


  c.  The ALJ's Finding that Plaintiff Experienced Medical Improvement which Increased his RFC is not Supported by Substantial Evidence

As noted above, at steps three and four of the sequential process, the ALJ must determine whether the claimant has experienced a medical improvement related to his ability to perform work.  Here, the ALJ found that as of July 1, 2007, Plaintiff experienced a medical improvement that resulted in an increased residual functional capacity.  Plaintiff argues that this

particular determination is not supported by substantial evidence.

Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." *Kennedy*, 247 Fed. Appx. at 764-65. A finding of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairments." *Id.* at 765. A medical improvement is related to the claimant's ability to work "only if there has been a decrease in the severity. . .of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities." *Id.*

In support of his conclusion that Plaintiff experienced a medical improvement, the ALJ relied on June 2007 treatment notes that Plaintiff's keloid had decreased in size as well as August 2007 treatment notes that Plaintiff was able to walk comfortably. (Tr. 26). As noted above, these particular observations are accurate. As also discussed above, treatment notes dated August 24, 2007, indicate that Plaintiff's right foot was "a bit better" and that physical therapy was "really helping." Treatment notes dated February 8, 2008, indicate that Plaintiff's keloid was "healing well" and that Plaintiff's foot pain was "manageable" with medication.

As previously noted, medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s)." As discussed below, the Court finds insufficient support for the conclusion that any such medical improvement Plaintiff experienced resulted in an increase in his residual functional capacity. Nevertheless, the ALJ's conclusion that Plaintiff did experience a medical improvement in his condition is supported by substantial evidence.

Having determined that Plaintiff experienced a medical improvement in his condition,

18

the next step in the analysis is to determine whether such improvement resulted in an increase in the claimant's residual functional capacity.  It is at this step of the analysis that the shortcomings in the ALJ's rationale become apparent.

To determine whether Plaintiff's ability to perform work activities increased as of July 1, 2007, it is necessary to compare Plaintiff's RFC for the time period from December 23, 2001, through June 30, 2007, with Plaintiff's RFC for the time period beginning July 1, 2007.  As previously noted, with respect to the time period beginning July 1, 2007, the ALJ articulated a detailed description of Plaintiff's RFC.  With respect to the preceding time period, however, the ALJ simply concluded that Plaintiff "had the residual functional capacity to perform a limited range of light work."  (Tr. 23).  It must be noted, however, that Plaintiff's post-July 1, 2007 RFC can also accurately be described as encompassing "a limited range of light work."  The ALJ's failure to more clearly and specifically articulate Plaintiff's pre-July 1, 2007 RFC prevents the Court from subjecting his rationale in this regard to any meaningful analysis and determining whether such is supported by substantial evidence.  Given that the ALJ bears the burden of proof at this point of the analysis, this shortcoming is fatal.

d.      The ALJ's RFC Determination is Not Supported by Substantial Evidence

Regarding the period beginning on July 1, 2007, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) he can stand/walk for two hours during an 8-hour workday; (2) he can sit for six hours during an 8-hour workday; (3) he cannot climb ladders, ropes, or scaffolds; (4) he is able to perform postural movements occasionally; and (5) he cannot operate pedals with his right foot.  As discussed above, the

19

shortcoming with the ALJ's RFC determination is that it is not supported by the medical evidence in that it fails to recognize that Plaintiff requires a sit/stand option. The Court offers no opinion as to Plaintiff's residual functional capacity, as determination of such is beyond the authority and skill of this Court, but instead simply concludes that the ALJ's RFC determination is not supported by substantial evidence.

  The vocational expert testified that given Plaintiff's RFC, there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

  As detailed herein, the Court finds that the ALJ's decision fails to comply with the relevant legal standards. However, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. As discussed herein, adjudication of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The undersigned recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings.

## <u>CONCLUSION</u>

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Date:  March 12, 2012                               /s/ Ellen S. Carmody_____
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge

21